**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No. 24-cr-207 (JEB) |
| v. : | |
| : | |
| CAMERON CLAPP, : | |
| : | |
| Defendant : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. Cameron Clapp has pleaded guilty to two Class B misdemeanors, a violation of 40 U.S.C. § 5104(e)(2)(D) (disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol) (Count Three) and a violation of 40 U.S.C. § 5104(e)(2)(G), (parading, demonstrating, or picketing in any Capitol building) (Count Four). For the reasons set forth herein, the government requests that this Court sentence Clapp to 14 days' incarceration on Count Three and 36 months' probation on Count Four. The government also requests that this Court impose 60 hours of community service, and, consistent with the plea agreement in this case, $500 in restitution.

**I.      Introduction**

Defendant Cameron Clapp, a 38-year-old motivational speaker, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer

1

of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

Clapp pleaded guilty to violations of 40 U.S.C. §§ 5104(e)(2)(D) and (G). The government's recommendation is supported by the defendant's (1) clear knowledge of the certification of the U.S. election prior to breaching the U.S. Capitol Building, (2) decision to delete photographs he took within the U.S. Capitol Building for the admitted purpose of removing inculpatory evidence from his phone, (3) decision to breach the U.S. Capitol Building despite his friend's contemporaneous decision to stay behind on U.S. Capitol Grounds, (4) admission that he witnessed vandalism on U.S. Capitol Grounds during his criminal activities, (5) disappointment that there were not more rioters who breached the U.S. Capitol Building and his statements of satisfaction after doing so himself, and (6) attempts to minimize his conduct, including stating to the FBI that he was merely an observer.

The Court must also consider that the defendant's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach the Capitol, and disrupt the proceedings. But for his actions alongside so many others, the riot likely would have failed. Here, the facts and circumstances of

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

Clapp's crime support a sentence of 14 days' incarceration, 36 months' probation, 60 hours of community service, and $500 in restitution.

## II.     Factual and Procedural Background

*The January 6, 2021 Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF No. 18 (Statement of Offense), at 1–3.

*Defendant Clapp's Role in the January 6, 2021 Attack on the Capitol*

In advance of January 6, 2021, the defendant traveled to Washington, D.C. from San Luis Obispo, California. On January 6, 2021, the defendant joined a mob and marched towards the U.S. Capitol as depicted in a video still near the Smithsonian's National Gallery of Art. *See* Image 1.



*Image 1: Still of Clapp marching eastward to the U.S. Capitol Building, with Clapp circled*

Prior to his arrest, the defendant maintained a public Facebook account where he had posted photos of him wearing the same distinctive vest as depicted in Image 1. *See* Image 2.

3



*Image 2: Facebook Photo*

On January 6, 2021, between approximately 3:00 p.m. and 4:00 p.m., Clapp trespassed on the restricted grounds of the U.S. Capitol Building. During this time, he posed for a photograph in front of a line of police officers in riot gear next near the Senate Wing Door. *See* Image 3.



*Image 3: Clapp posing for a photo in front of police officers*

At approximately 3:34 p.m., Clap breached the U.S. Capitol Building through the Senate Wing Door. *See* Image 4.



*Image 4: Screenshot from surveillance video near the Senate Wing Door at approximately 3:34 p.m., with Clapp circled*

At approximately 3:36 p.m., Clapp documented his criminal activity with his phone in the area near the Senate Wing Door. *See* Image 5.





*Image 5: Screenshots from surveillance video near the Senate Wing Door at approximately 3:36 p.m., with Clapp circled*

At approximately 3:38 p.m., Clapp exited the U.S. Capitol building. *See* Image 6



*Image 6: Screenshots from surveillance video near the Senate Wing Door at approximately 3:38 p.m., with Clapp circled*

After he exited through the Senate Wing Door, Clap stated with disappointment: "I made it in but there's [pause] nobody's in, like everyone's leaving so [pause] I did my part. I'm . . . satisfied." *See* Exhibit 1 (provided directly to the Court and the defendant).

Two videos found on Clapp's phone explain, in his own words, why Clapp was in Washington, D.C. on January 6, 2021. In the first video, taken on January 6, 2021, at approximately 1:38 p.m., Clapp states the following: "Why I am here? . . . I am here because I don't take no for an answer, and I take accountability. . . . Our votes have been completely stolen and taken from us and it's our job, it's our job to take this country back and that's what we're doing here, that's why I'm here." *See* Exhibit 2 (provided directly to the Court and the defendant).

In the second video, taken on January 6, 2021, at approximately 1:44 PM, Clapp states the following: "So I'm here, in D.C. on January 6, 2021. It's the day that Congress is certifying the electors, we'll see what happens. But I am here, why am I here? Well let's take it back, doctors said I would never walk again, I proved them wrong, I won't take no for an answer, and I am walking and I am walking and resonating with all the patriots here. . . . USA USA USA." *See* Exhibit 3 (provided directly to the Court and the defendant).

7

On February 13, 2024, Clapp gave a voluntary post-arrest interview to the FBI. *See* Exhibit 4 (provided directly to the Court and the defendant). During the interview, he admitted to traveling to Washington, *see id.* at 11:45, and in part to attend the former President's rally on January 6, 2021, *see id.* at 13:15. Clapp attended the former President's speech at the ellipse, *see id.* at 16:03, and "to anticipate the results, the decisions of the electors," *see id.* at 17:48.

Clapp traveled with a friend, Shane Clary, from the speech to the Capitol grounds but when they arrived to the U.S. Capitol Grounds his friend left, stating did not "feel good about this" and choose to stay behind. *See id* at 19:55. Clapp, however, "forged on." *See id* at 19:50. Specifically, Clapp stated that he "felt compelled to press on." *See id* at 20:51. Clapp also admitted that he knew that the election was being certified in the U.S. Capitol Building and that Vice President Mike Pence was in the building prior to Clapp's unlawful entry. *See id* at 28:35. Moreover, Clapp observed vandalism on U.S. Capitol grounds. *See id* at 32:09. Nevertheless, Clapp maintained a sense of "solidarity with many people who were there." *See id* at 36:40. Clapp as not a mere bystander; rather, he was a part and parcel of the riot.

Furthermore, Clapp admitted to deleting photos he took from inside the U.S. Capitol Building from his phone shortly following January 6, 2021, *see id* at 42:47, because he "did not want to keep them on his phone." *See id* at 44:50. Clapp informed the FBI that he may have backed up the photos on a computer, but that the computer was allegedly accidentally destroyed. Throughout the interview, Clapp described himself as merely an observer, having to leave the U.S. Capitol Building due to the large police presence. *See id.* at 32:40, 33:15.

*The Charges and Plea Agreement*

On April 26, 2024, the United States charged Clapp by a four-count Information with violating 18 U.S.C. §§ 1752(a)(1) and (2) as well as 40 U.S.C. §§ 5104(e)(2)(D) and (G). On July

8, 2024, pursuant to a plea agreement, Clapp pleaded guilty to Counts Three and Four of the Information, charging him with a violation of 40 U.S.C. §§ 5104(e)(2)(D) and (G). By plea agreement, Defendant agreed to pay $500 in restitution to the Architect of the Capitol.

### III. Statutory Penalties

Clapp now faces a sentencing for violating 40 U.S.C. §§ 5104(e)(2)(D) and (G). As these offenses are a Class B Misdemeanor, the Sentencing Guidelines do not apply to them 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

### IV. Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the Section 3553(a) factors weigh in favor of 14 days' incarceration, 36 months' probation, 60 hours of community service, and $500 in restitution.

#### A. The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Clapp's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like Clapp, the absence of violent or destructive acts is not a mitigating factor. Had Clapp engaged in such conduct, he would have faced additional criminal charges.

One of the most important factors in Clapp's case is his stated intent. After Clapp exited the U.S. Capitol Building, he stated with disappointment: "I made it in but there's [pause] nobody's in, like everyone's leaving so [pause] I did my part. I'm . . . satisfied." *See* Exhibit 1. Even though Clapp was one of later rioters to breach the U.S. Capitol Building, his trespass continued to the delay in the certification of the 2020 election. In fact, prior to entering the U.S. Capitol Building, Clapp explained in his own words why he was there: "So I'm here, in D.C. on January 6, 2021. It's the day that Congress is certifying the electors, we'll see what happens. But I am here, why am I here? Well let's take it back . . . I won't take no for an answer . . . . USA USA USA." *See* Exhibit 3. He also admitted that he knew that the election was being certified in the U.S. Capitol Building and that Vice President Mike Pence was in the building prior to his unlawful entry. *See id* at 28:35.

Furthermore, Clapp admitted to deleting photos he took from inside the U.S. Capitol Building from his phone shortly following January 6, 2021, *see id* at 42:47, because he "did not want to keep them on his phone." *See id* at 44:50. Nevertheless, Clapp continually minimized his involvement, describing himself as merely an observer. *See id.* at 32:40, 33:15. His actions to delete evidence suggest Clapp knew what he was doing was wrong and his pre-emptive attempts to obfuscate inculpatory evidence should be taken into account when fashioning punishment.

Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of incarceration in this matter.

### B. Clapp's History and Characteristics

As set forth in the PSR, Cameron Clapp's criminal history consists of a misdemeanor conviction for Driving Under the Influence with a Blood Alcohol Level over .08%, for which he

was sentenced 3 years' probation and 2 days incarceration, speeding, and shoplifting. *See* ECF 21 (PSR), Page 8.

Clapp has relatives who have struggled with depression, alcoholism, and addiction, including his twin brother who overdosed on heroin in 2008. *See id*, Pages 9–10. Clapp states that he sustained sexual abuse by an older friend when he was seven years old. *See id.*, Page 10.

Clapp is a triple amputee because of an accident that occurred in 2001, when Clapp had been drinking, passed out on train tracks, and was hit by a train. *See id.*, Page 11. Clapp currently abstains from alcohol. *See id.*, Page 12.

Clapp has been compliant with his conditions of pre-trial release. *See id.*, Page 5.

Ultimately, Clapp's participation in the January 6, 2021 attack on the U.S. Capitol with the stated purpose of stopping the peaceful transfer of power was an unprecedented crime of historic proportions. The government does not seek to minimize the defendant's trauma. However, no amount of personal trauma can excuse the trauma Clapp helped inflict on our nation. Consequently, the government's sentencing recommendation takes Clapp's history and characteristics into account.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Cronin*, 22-cr-233-ABJ, Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building. What this was an attack on our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.")

11

### D. The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

The need for the sentence to provide specific deterrence to this particular defendant also weighs heavily in favor of a term of incarceration.

First, Clapp was disappointed that there was not more rioting in the U.S. Capitol Building: "I made it in but there's [pause] nobody's in, like everyone's leaving so [pause] I did my part.  I'm . . . satisfied." *See* Exhibit 1. Clapp is and was well informed about the electoral process. Prior to entering the U.S. Capitol Building, Clapp explained in his own words why he was there: "So I'm here, in D.C. on January 6, 2021.  It's the day that Congress is certifying the electors . . . ." *See*

12

Exhibit 3. Consequently, the government and public have an immense interest specifically deterring this individual.

Second, although Clapp accepted responsibility by stipulating to all of the facts underlying his guilt and resolving his case via a plea agreement, he has not taken any substantial step to denounce his words and actions on January 6, 2021, including to the Probation officer who conducted his PSR interview. *See* PSR, Page 7 (declining to make a statement to the Probation Officer). The Court should view any remorse Clapp expresses at sentencing with skepticism at best. *See United States v. Matthew Mazzocco*, 1:21-cr-00054 (TSC), Tr. 10/4/2021 at 29-30 ("[The defendant's] remorse didn't come when he left that Capitol. It didn't come when he went home. It came when he realized he was in trouble. It came when he realized that large numbers of Americans and people worldwide were horrified at what happened that day. It came when he realized that he could go to jail for what he did. And that is when he felt remorse, and that is when he took responsibility for his actions.") (statement of Judge Chutkan).

### E. The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers.[2] This Court must sentence Clapp based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot.

---

[2] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

Clapp has pleaded guilty to Counts three and four of the Information, in violation of 40 U.S.C. §§ 5104(e)(2)(D) and (G). These offenses are Class B misdemeanors, to which the Sentencing Guidelines do not apply, U.S.S.G. § 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), do apply, however.

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the conduct in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

In *United States v. Louis Valentin*, 21-cr-702 (JEB), the defendant pleaded guilty to one count of violating 40 U.S.C. § 5104(e)(2)(G) (parading, demonstrating, or picketing in a capitol building). Valentin remained in the U.S. Capitol Building for over 30 minutes, despite telling the FBI he was inside for 10 minutes, and watched others confront police officers. Valentin also minimized his conduct when later interviewed by the FBI. This Court sentenced Valentin to 10 days of incarceration.

While Clapp and Valentin both succeeded in halting the Congressional certification, only in the case of Clapp has the government presented motive evidence: Clapp went to Washington, D.C. with clear knowledge of the certification of the 2020 election. While Valentin spent more time inside the U.S. Capitol Building, Clapp's conduct was qualitatively worse. Clapp lamented that he was unable to riot further inside the U.S. Capitol building because of the large police presence at the time of his breach. Valentin and Clapp similarly minimized their conduct, with

Clapp stating he was simply an observer. Finaly, whereas Valentin had an accomplice in his co-defendant, Clapp was charged alone as his friend exercised better judgment and chose not to go inside the U.S. Capitol Building. Clapp did not heed his friend's warning and instead joined the siege. Moreover, Clapp immediately expressed disappointment that more were not rioting inside the U.S. Capitol Building and deleted from his phone evidence of his crime.

In *United States v. Dominick Madden*, 21-cr-055 (JEB), the defendant pleaded guilty to one count of violating 40 U.S.C. § 5104(e)(2)(G) (parading, demonstrating, or picketing in a capitol building). Madden was one of the first to breach the police line at the Lower West Terrance, witnessed assaults on law enforcement, and attempted to destroy evidence. This Court sentenced Madden to 20 days of incarceration.

Madden's conduct was marginally worse than Clapp's. While Madden was one of the first to breach the Lower West Terrace, Clapp was one of the last to breach the Senate Wing Doors. Nevertheless, Clapp was cognizant of police officers throughout his criminal trespass, including posing in front of a police line and encountering an overwhelming police line inside the Senate Wing Door area that prevented him from pushing forward. While Madden witnessed assaults, Clapp witnessed, in his own words, vandalism. It bears repeating, however, when compared to Madden only in the case of Clapp has the government presented evidence that Clapp was aware of the certification of the 2020 election. His decision to breach the U.S. Capitol Building with knowledge of the Vice President presiding over the certification is telling. In contrast to Madden who only attempted to do so, Clapp successfully deleted inculpatory evidence from his phone. While Madden's conduct at the time was worse, Clapp's knowledge of the certification and subsequent actions demonstrate that Clapp's overall culpability is only marginally less than that

of Madden. Clapp also pleaded guilty to two misdemeanor counts as opposed to one in both *Valentin* and *Madden*.

V.     **Restitution**

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[3] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Clapp must pay $500 in restitution, which reflects in part the role Clapp played in the riot on January 6.[4] Plea Agreement at ¶ 11. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,923,080.05" in damages, a

---

[3] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

[4] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of July 2023." *Id.* Clapp has been found able to pay and his restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR, Pages 25, 49.

## VI. Fine

The defendant's convictions for violations of 40 U.S.C. §§ 5104(e)(2)(D), (G) subject him to a statutory maximum fine of $5,000 for Count Three and $5,000 for Count Four. *See* 18 U.S.C. § 3571(b). In determining whether to impose a fine, the sentencing court should consider the defendant's income, earning capacity, and financial resources. *See* 18 U.S.C. § 3572(a)(1); *See* U.S.S.G. § 5E1.2(d). The sentencing guidelines require a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine. U.S.S.G. § 5E1.2(a) (2023). Here, the defendant's financial assets set forth in the PSR suggest that the defendant is unable, and is unlikely to become able, to pay a fine. *See* PSR, Page 14.

## VII. Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Defendant to a sentence of 14 days' incarceration, 36 months' probation, 60 hours of community service, and $500 in restitution. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on Clapp's liberty as a consequence of his behavior, while recognizing his acceptance of responsibility for his crime.

    Respectfully submitted,

    MATTHEW M. GRAVES
    United States Attorney
    D.C. Bar No. 481052

By: <u>s/ *Pavan S. Krishnamurthy*</u>
PAVAN S. KRISHNAMURTHY
Assistant United States Attorney
D.C. Bar No. 252831
601 D St., NW
Washington, DC 20530
(202) 252-7862
pavan.krishnamurthy@usdoj.gov